FILED IN OPEN COURT
U.S.D.C. - Atlanta

JUL 1 2 2022

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

# GUILTY PLEA and PLEA AGREEMENT

United States Attorney
Northern District of Georgia

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION
CRIMINAL NO. 1:21-CR-122

The United States Attorney for the Northern District of Georgia ("the Government") and Defendant Raderick Lee Gosnell enter into this plea agreement as set forth below in Part IV pursuant to Rules 11(c)(1)(A) & (B) of the Federal Rules of Criminal Procedure. Raderick Lee Gosnell, Defendant, having received a copy of the above-numbered Indictment and having been arraigned, hereby pleads GUILTY to Count 1.

## I. ADMISSION OF GUILT

1. The Defendant admits that he is pleading guilty because he is in fact guilty of the crime charged in Count 1.

## II. ACKNOWLEDGMENT & WAIVER OF RIGHTS

2. The Defendant understands that by pleading guilty, he is giving up the right to plead not guilty and the right to be tried by a jury. At a trial, the Defendant would have the right to an attorney, and if the Defendant could not afford an attorney, the Court would appoint one to represent the Defendant at trial and at every stage of the proceedings. During the trial, the Defendant would be presumed innocent and the Government would have the burden of proving him guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the witnesses against him. If the Defendant wished, he could testify on his own behalf and present evidence in his defense, and he

could subpoena witnesses to testify on his behalf. If, however, the Defendant did not wish to testify, that fact could not be used against him, and the Government could not compel him to incriminate himself. If the Defendant were found guilty after a trial, he would have the right to appeal the conviction.

3. The Defendant understands that by pleading guilty, he is giving up all of these rights and there will not be a trial of any kind.

4. By pleading guilty, the Defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could have been filed.

5. The Defendant also understands that he ordinarily would have the right to appeal his sentence and, under some circumstances, to attack the conviction and sentence in post-conviction proceedings. By entering this Plea Agreement, the Defendant may be waiving some or all of those rights to appeal and to collaterally attack his conviction and sentence, as specified below.

6. Finally, the Defendant understands that, to plead guilty, he may have to answer, under oath, questions posed to him by the Court concerning the rights that he is giving up and the facts of this case, and the Defendant's answers, if untruthful, may later be used against him in a prosecution for perjury or false statements.

### III. ACKNOWLEDGMENT OF PENALTIES

7. The Defendant understands that, based on his plea of guilty, he will be subject to the following maximum and mandatory minimum penalties:

**As to Count 1: Conspiracy to Possess Methamphetamine With Intent to Distribute [ 21 U.S.C. §846, 841(a)(1), and 841(a)(1)(B)]**

   a. Maximum term of imprisonment: Life.

   b. Mandatory minimum term of imprisonment: 10 years.

   c. Term of supervised release: 5 year(s) to Life.

   d. Maximum fine: $10,000,000.00, due and payable immediately.

   e. Full restitution, due and payable immediately, to all victims of the offense(s) and relevant conduct.

   f. Forfeiture of any and all proceeds from the commission of the offense, any and all property used or intended to be used to facilitate the offense, and any property involved in the offense.

8. The Defendant understands that, before imposing sentence in this case, the Court will be required to consider, among other factors, the provisions of the United States Sentencing Guidelines and that, under certain circumstances, the Court has the discretion to depart from those Guidelines. The Defendant further understands that the Court may impose a sentence up to and including the statutory maximum as set forth in the above paragraph and that no one can predict his exact sentence at this time.

9. REMOVAL FROM THE UNITED STATES: The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of

crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Indeed, because the Defendant is pleading guilty to this offense, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the District Court, can predict to a certainty the effect of his conviction on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## IV.   PLEA AGREEMENT

10. The Defendant, his counsel, and the Government, subject to approval by the Court, have agreed upon a negotiated plea in this case, the terms of which are as follows:

### Dismissal of Counts

11. The Government agrees that, upon the entry of the Judgment and Commitment Order, any and all remaining counts in the above-styled case still pending against the Defendant shall be dismissed pursuant to Standing Order No. 07-04 of this Court and to Rule 48(a) of the Federal Rules of Criminal Procedure. The Defendant understands that the Probation Office and the Court may still consider the conduct underlying such dismissed counts in determining relevant conduct under the Sentencing Guidelines and a reasonable sentence under Title 18, United States Code, Section 3553(a).

## No Additional Charges

12. The United States Attorney for the Northern District of Georgia agrees not to bring further criminal charges against the Defendant related to the charges to which he is pleading guilty. The Defendant understands that this provision does not bar prosecution by any other federal, state, or local jurisdiction.

## Factual Basis

13. The parties agree that if this case went to trial, the Government would prove by admissible evidence and beyond reasonable doubt the following facts:

   a. In September 2020, Drug Enforcement Administration (DEA) Atlanta-Carolina's High Intensity Drug Trafficking Area Group III (HIDTA-3) received information that an individual named Jorge Rodriguez-Martinez ("Rodriguez") was distributing methamphetamine in the Atlanta metropolitan area.

   b. On September 30, 2020, DEA investigators secured a search warrant from United States Magistrate Judge Regina D. Cannon and placed a tracking device on a burgundy Ford F-250 agents believe to be the work vehicle of Rodriguez.

   c. On October 7, 2020, HIDTA-3 received information that Rodriguez might engage in a drug trafficking transaction that day. HIDTA-3 monitored Rodriguez's whereabouts until he arrived at a shopping center in the vicinity of 4110 Old Dixie Road, Hapeville, Georgia, in the Northern District of Georgia.

d. At approximately 4:13 p.m. that day, Rodriguez met in the parking lot of that shopping center with a Hispanic male in a Jeep, later identified as co-defendant Sergio Vasquez ("Vasquez").

e. At approximately 5:53 p.m., a 2017 Mazda 3 Sport entered the parking lot and approached Vasquez's Jeep. The driver of the vehicle, later identified as co-defendant Rebeca Leigh Vissage ("Vissage"), got out of the Mazda and entered the passenger side of the Jeep. Minutes later, she left the front passenger seat of the Jeep, opened the rear passenger door of the Jeep, removed a Home Depot box, and placed it in the trunk of the Mazda. She then got into the Mazda and drove away. HIDTA-3 followed the Mazda and noticed that Vissage and the passenger, later identified as Defendant Raderick Lee Gosnell ("GOSNELL"), looking around behind them, consistent with checking to see whether they were being followed by law enforcement.

f. Shortly thereafter, Georgia State Patrol (GSP) Troopers took over surveillance of the Mazda and attempted to conduct a traffic stop on the car.

g. Vissage failed to stop and GSP Troopers conducted a pursuit. During the pursuit, troopers conducted a maneuver to attempt to stop the vehicle; however, the vehicle recovered and continued to flee. During the maneuver, GSP Troopers observed GOSNELL throwing objects out of the passenger side window of the vehicle.

h. Vissage regained control of the vehicle and drove further before GSP Troopers boxed the vehicle in and forced them to stop. GSP Troopers conducted a search of the vehicle and found two kilograms of a crystalized substance inside of a Ziploc bag in a Home Depot box in the trunk of the vehicle. The substance was sent for forensic testing, which confirmed the bag contained 1,917 grams of actual methamphetamine. Smaller amounts of other drugs (including cocaine, marijuana and oxycodone) and a methamphetamine pipe were also located within the vehicle and outside the vehicle where GOSNELL had thrown them.

i. In addition to the drugs, investigators seized three cellular phones from GOSNELL and one from Vissage. Subsequent review of Vissage's phone showed that Vissage corresponded with an individual called "Millenium" through WhatsApp regarding the purchase and sale of drugs, including methamphetamine and marijuana. "Millennium" sent her the address "4110 old dixie rd atlanta ga 30354" (the same address where Vissage picked up two kilograms of methamphetamine from Vasquez).

j. Chats between Vissage and GOSNELL show that the two referred to themselves as a "team," discussed prices for various amounts and types of drugs, and referred to drug trafficking as their "job." The texts reflect that GOSNELL independently sold drugs as well. Vissage and GOSNELL discussed the purchase and sale of weed, cocaine, and methamphetamine, using slang terms like "dope,"

7

"cabbage," and "cream." The conversations discussed the involvement of a drug cartel and the additional protection provided by the cartel. Vissage and GOSNELL discussed police activity within their neighborhood and ways to avoid detection. Vissage and GOSNELL exchanged texts with photographs of drugs, large amounts of U.S. currency, and firearms. Finally, Vissage and GOSNELL discussed the logistics of traveling to Atlanta on October 7, 2020, the day of their arrest.

k. There were also photographs on Vissage's phone consistent with drug trafficking activity, such as buds of a green leafy substance, a small handgun, a money transfer receipt up to $2,500, a white crystalline substance in a gallon-size bag, large amounts of currency, a gun, a scale with a crystal substance on the top, a green leafy substance in a clear plastic container, screen shots of text conversations concerning the sale of marijuana, and an electronic money transfer for $1,500 to "Daniel Alvarado Garcia."

## Sentencing Guidelines Recommendations

14. Based upon the evidence currently known to the Government, the Government agrees to make the following recommendations and/or to enter into the following stipulations.

**Variance**

15. Unless the Defendant engages in conduct inconsistent with accepting responsibility, as described more fully in paragraph 16, based on the factors set forth in 18 U.S.C. § 3553(a), the Government agrees to recommend that the

Defendant receive a downward variance at sentencing equivalent to two guideline offense levels.

**Acceptance of Responsibility**

16. The Government will recommend that the Defendant receive an offense level adjustment for acceptance of responsibility, pursuant to Section 3E1.1, to the maximum extent authorized by the guideline. However, the Government will not be required to recommend acceptance of responsibility if, after entering this Plea Agreement, the Defendant engages in conduct inconsistent with accepting responsibility. Thus, by way of example only, should the Defendant falsely deny or falsely attempt to minimize the Defendant's involvement in relevant offense conduct, give conflicting statements about the Defendant's involvement, fail to pay the special assessment, fail to meet any of the obligations set forth in the Financial Cooperation Provisions set forth below, or participate in additional criminal conduct, including unlawful personal use of a controlled substance, the Government will not be required to recommend acceptance of responsibility.

### Right to Answer Questions, Correct Misstatements, and Make Recommendations

17. The parties reserve the right to inform the Court and the Probation Office of all facts and circumstances regarding the Defendant and this case, and to respond to any questions from the Court and the Probation Office and to any misstatements of fact or law. Except as expressly stated elsewhere in this Plea Agreement, the parties also reserve the right to make recommendations regarding application of the Sentencing Guidelines. The parties understand,

9

acknowledge, and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed.

## Right to Modify Recommendations

18. With regard to the Government's recommendation as to any specific application of the Sentencing Guidelines as set forth elsewhere in this Plea Agreement, the Defendant understands and agrees that, should the Government obtain or receive additional evidence concerning the facts underlying any such recommendation, the Government will bring that evidence to the attention of the Court and the Probation Office. In addition, if the additional evidence is sufficient to support a finding of a different application of the Guidelines, the Government will not be bound to make the recommendation set forth elsewhere in this Plea Agreement, and the failure to do so will not constitute a violation of this Plea Agreement.

## Sentencing Recommendations

**Forfeiture**

19. The Defendant acknowledges that each asset listed below is subject to forfeiture pursuant to Title 21, United States Code, section 853 and agrees that he shall immediately forfeit to the United States any proceeds from, property used or intended to be used to facilitate, and property involved in the commission of the offense in Count One.

20. The Defendant waives and abandons all right, title, and interest in the Subject Property and agrees to the administrative or judicial forfeiture of the Subject Property. In addition, the Defendant waives and abandons his interest in

any other property that may have been seized in connection with this case. The Defendant agrees to the administrative or judicial forfeiture or the abandonment of any seized property.

21. The Defendant states that he is the sole and rightful owner of the Subject Property, that to the best of his knowledge no other person or entity has any interest in the Subject Property, and that he has not transferred, conveyed, or encumbered his interest in the Subject Property. The Defendant agrees to take all steps requested by the United States to facilitate transfer of title of the Subject Property, including providing and endorsing title certificates, or causing others to do the same where third parties hold nominal title on the Defendant's behalf, to a person designated by the United States. The Defendant agrees to take all steps necessary to ensure that the Subject Property is not hidden, sold, wasted, destroyed, or otherwise made unavailable for forfeiture. The Defendant agrees not to file any claim, answer, or petition for remission or restitution in any administrative or judicial proceeding pertaining to the Subject Property, and if such a document has already been filed, the Defendant hereby withdraws that filing.

22. The Defendant agrees to hold the United States and its agents and employees harmless from any claims made in connection with the seizure, forfeiture, or disposal of property connected to this case. The Defendant acknowledges that the United States will dispose of any seized property, and that such disposal may include, but is not limited to, the sale, release, or destruction of any seized property, including the Subject Property. The Defendant agrees to waive any and all constitutional, statutory, and equitable

challenges in any manner (including direct appeal, a Section 2255 petition, habeas corpus, or any other means) to the seizure, forfeiture, and disposal of any property seized in this case, including the Subject Property, on any grounds.

23. The Defendant consents to the Court's entry of a preliminary order of forfeiture against the Subject Property, which will be final as to him, a part of his sentence, and incorporated into the judgment against him.

**Financial Cooperation Provisions**

**Special Assessment**

24. The Defendant understands that the Court will order him to pay a special assessment in the amount of $100.

**Fine/Restitution - Terms of Payment**

25. The Defendant agrees to pay any fine and/or restitution, plus applicable interest, imposed by the Court to the Clerk of Court for eventual disbursement to the appropriate account and/or victim(s). The Defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the Defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, he agrees that the custodial agency and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The Defendant understands that this payment schedule represents a minimum obligation and that, should the Defendant's financial situation establish that he is able to pay more toward the fine and/or restitution, the Government is entitled to pursue other sources of recovery of the fine and/or restitution. The Defendant further agrees to cooperate fully in efforts to collect

the fine and/or restitution obligation by any legal means the Government deems appropriate. Finally, the Defendant and his counsel agree that the Government may contact the Defendant regarding the collection of any fine and/or restitution without notifying and outside the presence of his counsel.

**Financial Disclosure**

26. The Defendant agrees that the Defendant will not sell, hide, waste, encumber, destroy, or otherwise devalue any such asset worth more than $2,000 before sentencing, without the prior approval of the Government. The Defendant understands and agrees that the Defendant's failure to comply with this provision of the Plea Agreement should result in the Defendant receiving no credit for acceptance of responsibility.

27. The Defendant agrees to cooperate fully in the investigation of the amount of forfeiture, restitution, and fine; the identification of funds and assets in which he has any legal or equitable interest to be applied toward forfeiture, restitution, and/or fine; and the prompt payment of restitution or a fine.

28. The Defendant's cooperation obligations include: (A) fully and truthfully completing the Department of Justice's Financial Statement of Debtor form, and any addenda to said form deemed necessary by the Government, within ten days of the change of plea hearing; (B) submitting to a financial deposition or interview (should the Government deem it necessary) prior to sentencing regarding the subject matter of said form; (C) providing any documentation within his possession or control requested by the Government regarding his financial condition and that of his household; (D) fully and truthfully answering all questions regarding his past and present financial condition and that of his

### Recommendations/Stipulations Non-binding

30. The Defendant understands and agrees that the recommendations of the Government incorporated within this Plea Agreement, as well as any stipulations of fact or guideline computations incorporated within this Plea Agreement or otherwise discussed between the parties, are not binding on the Court and that the Court's failure to accept one or more of the recommendations, stipulations, and/or guideline computations will not constitute grounds to withdraw his guilty plea or to claim a breach of this Plea Agreement.

### Limited Waiver of Appeal

31. LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or upward variance above the sentencing guideline range as calculated by the District Court. Claims that the Defendant's counsel rendered constitutionally ineffective assistance are excepted from this waiver. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

15

## Miscellaneous Waivers

**FOIA/Privacy Act Waiver**

32. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act of 1974, Title 5, United States Code, Section 552a.

## No Other Agreements

33. There are no other agreements, promises, representations, or understandings between the Defendant and the Government.

In Open Court this 12th day of July, 2022.

_____
SIGNATURE (Defendant's Attorney)
Natasha Perdew Silas

_____
SIGNATURE (Defendant)
Raderick Lee Gosnell

_____
SIGNATURE (Special Assistant U.S. Attorney)
Rachel S. Lyons

_____
SIGNATURE (Approving Official)
Laurel Boatright Milam

I have read the Indictment against me and have discussed it with my attorney. I understand the charges and the elements of each charge that the Government would have to prove to convict me at a trial. I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. I also have discussed with my attorney the rights I may have to appeal or challenge my conviction and sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding. No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement. The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my permission. I am fully satisfied with the representation provided to me by my attorney in this case.

_____    \_\_\_7-12-22_____
SIGNATURE (Defendant)                          DATE
Raderick Lee Gosnell

  I am Raderick Lee Gosnell's lawyer. I have carefully reviewed the charges and the Plea Agreement with my client. To my knowledge, my client is making an informed and voluntary decision to plead guilty and to enter into the Plea Agreement.

_____     July 12, 2022
SIGNATURE (Defendant's Attorney)   DATE
Natasha Perdew Silas

Federal Defender Program Inc.
Suite 1500, Centennial Tower
101 Marietta Street, NW
Atlanta, GA 30303
404-688-7530

571970 State Bar of Georgia Number

Filed in Open Court

This ___ day of _____, 20___

By _____

U. S. DEPARTMENT OF JUSTICE
Statement of Special Assessment Account

This statement reflects your special assessment only. There may be other penalties imposed at sentencing.

| ACCOUNT INFORMATION ||
|---|---|
| CRIMINAL ACTION NO.: | 1:21-CR-122 |
| DEFENDANT'S NAME: | RADERICK LEE GOSNELL |
| PAY THIS AMOUNT: | $100 |

Instructions:
1. Payment must be made by **certified check** or **money order** payable to:
   Clerk of Court, U.S. District Court
   **\*personal checks will not be accepted\***
2. Payment must be made to the clerk's office by the day of sentencing.
3. Payment should be sent or hand delivered to:
   Clerk, U.S. District Court
   2211 U.S. Courthouse
   75 Ted Turner Drive SW
   Atlanta, Georgia 30303
   (Do Not Send Cash)
4. Include the defendant's name on **certified check** or **money order.**
5. Enclose this coupon to insure proper and prompt application of payment.
6. Provide proof of payment to the above-signed AUSA within 30 days of the guilty plea.

19